```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
                                                      :
PAULETTE DELOTCH,                                     :
                                                      :
                        Plaintiff,                    :
                                                      :        06 Civ. 5483 (GEL)
        -against-                                     :
                                                      :        OPINION AND ORDER
WAL-MART STORES, INC.,                                :
                                                      :
                        Defendant.                    :
------------------------------------------------------x
```

Michael G. O'Neill, New York, NY, for plaintiff.

Patricia A. O'Connor, Brody, O'Connor &
O'Connor, Northport, NY, for defendant.

GERARD E. LYNCH, District Judge:

While shopping at the Wal-Mart in Fishkill, plaintiff Paulette DeLotch slipped on a peeled banana and fell. DeLotch sued defendant Wal-Mart Stores, Inc., ("Wal-Mart") in Bronx County, and Wal-Mart removed the case to this Court. After a rocky period of discovery (see Order of February 20, 2008; Order of March 4, 2008), Wal-Mart now moves for summary judgment, which will be granted.

## BACKGROUND[1]

On August 10, 2008, DeLotch and her sisters were shopping at Wal-Mart together. One of DeLotch's sisters, walking in front of DeLotch, slipped on the banana, but caught her balance. (D. Rule 56.1 Stmt. ¶ 3, citing Deposition of Paulette DeLotch, dated November 13, 2007, 48-49; accord P. Rule 56.1 Stmt. ¶ 3.) DeLotch saw her sister slide. (D. Rule 56.1 Stmt. ¶ 3, citing

---

[1] Since Wal-Mart moves for summary judgment, the Court makes no factual findings, but views the facts in the light most favorable to DeLotch, the nonmoving party. Therefore, the facts in this section are either undisputed or presented in the light most favorable to DeLotch.

DeLotch Dep. 48-49; accord P. Rule 56.1 Stmt. ¶ 3.) Almost simultaneously, DeLotch slipped on the same banana and fell. (D. Rule 56.1 Stmt. ¶ 3, citing DeLotch Dep. 49; accord P. Rule 56.1 Stmt. ¶ 3.) No one was able to describe the condition of the banana prior to the fall. After the fall, though, DeLotch and her sisters examined the area where she fell. DeLotch described the substance on which she fell as "brownish," "maybe more of a dark brown," and determined that she stepped on a banana based on the substance's smell. (D. Rule 56.1 Stmt. ¶ 3, citing DeLotch Dep. 53-55; accord P. Rule 56.1 Stmt. ¶ 3.) One of DeLotch's sisters described the substance as "a light-ish color brown, mushy, dark." (D. Rule 56.1 Stmt. ¶ 5, citing Deposition of Julia Gomez, dated November 13, 2007, 27; accord P. Rule 56.1 Stmt. ¶ 5.) Another described it as "gray/brown/yellow, but brownish gray." (D. Rule 56.1 Stmt. ¶ 8, citing Deposition of Christine Alado, dated November 13, 2007, 29; accord P. Rule 56.1 Stmt. ¶ 8.) DeLotch also testified that she slipped on a peeled banana, as she was unable to find a peel in the vicinity of the fall. (D. Rule 56.1 Stmt. ¶ 3; accord P. Rule 56.1 Stmt. ¶ 3; Alado Dep. 30.)

DeLotch points to no evidence in the record supporting the conclusion that Wal-Mart or any of its agents placed the banana on the floor, or had actual notice of the banana on the floor before the accident. She relies on circumstantial inferences to argue that defendant had constructive notice of the condition.

## DISCUSSION

I. **Legal Standards**

   A. Summary Judgment

Summary judgment is appropriate where the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact

and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the initial burden of explaining the basis for its motion and identifying those portions of the record which it believes "demonstrate the absence of a genuine issue of material fact." Id. at 323. The burden then shifts to the nonmovant to produce evidence sufficient to create a genuine issue of material fact for trial. Fed. R. Civ. P. 56(e)(2) (When a summary judgment motion is "properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in [Rule 56] – set out specific facts showing a genuine issue for trial."); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under [Rule 56], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." (citations omitted)).

The Court's responsibility is to determine if there is a genuine issue to be tried, and not to resolve disputed issues of fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The Court must draw all reasonable inferences and resolve all ambiguities in the nonmovant's favor, and construe the facts in the light most favorable to the nonmovant. Id. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." (citation omitted)). However, the "mere existence of a scintilla of evidence in support of

the [nonmovant's] position will be insufficient" to withstand a motion for summary judgment. Id. at 252.

A nonmovant's unsupported denials of the movant's evidence, without more, cannot create disputes of material fact. See Fed. R. Civ. P. 56(e)(2). Affidavits must be supported by personal knowledge. Danzer v. Norden Sys., Inc., 151 F.3d 50, 57 n.5 (2d Cir. 1998). Likewise, "conclusory statements or mere allegations [are] not sufficient to defeat a summary judgment motion." Davis v. New York, 316 F.3d 93, 100 (2d Cir. 2002) (citations omitted); see also id. ("The nonmoving party must go beyond the pleadings and by [his or] her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." (alterations in original) (citation and internal quotation marks omitted)).

B.      Property Owners' Duties to Invitees

Under clearly established New York law, which governs this dispute, a plaintiff may establish a prima facie case of negligence in a tort action such as this by demonstrating that the defendant (1) created the offending condition or (2) had actual or constructive notice of the condition in advance of the accident. See Gordon v. Am. Museum of Natural History, 67 N.Y.2d 836, 837 (1986); Lewis v. Metro. Transp. Auth., 427 N.Y.S.2d 368, 371 (1st Dep't 1984). "To constitute constructive notice, a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it." Gordon, 67 N.Y.2d at 837 (citations omitted). If, for example, the banana had been on the floor for a substantial period of time without being removed, and DeLotch thereafter slipped on it, then Wal-Mart would have had "constructive notice" of the banana, and would be

4

liable to her for her injuries. However, if the banana had been dropped moments before she slipped, as long as Wal-Mart did not cause the banana to be placed in the aisle and had no actual notice of the banana, it is not liable to DeLotch for her injuries.

## II. **Legal Standards Applied**

### A. Constructive Notice

DeLotch points to no evidence in the record from which a reasonable factfinder could conclude that Wal-Mart, or any of its agents, caused the banana to be placed in the aisle, or otherwise created the hazardous condition, or had actual notice before the accident of the banana on the floor of the supermarket. DeLotch contends, however, that WalMart had constructive notice of the dangerous condition.

DeLotch argues that a reasonable factfinder could infer from the condition of the banana that it had been on the floor for a significant period of time. She relies on record evidence that: (1) a bin of bananas being sold by Wal-Mart was located within twenty-five feet of where she fell; (2) the banana upon which she slipped and fell was "brown and mushy"; (3) no banana peel was found in the vicinity of the accident; and (4) a freshly peeled banana does not turn brown and mushy quickly. (P. Opp. 8.) From these facts (which the Court accepts as true for the purposes of this motion), DeLotch argues that a reasonable factfinder could infer that the banana had been on the floor for a significant length of time. First, she argues that, since no peel was found in the vicinity, it is "reasonable to infer that whoever dropped the banana had peeled it for the purposes of eating it." (Id.) Second, she suggests that because "people do not peel and eat overripe bananas, it is a safe conclusion that the banana was not brown and mushy when it was peeled." (Id.) Third, she contends that, given the proximity between the accident and Wal-

Mart's bin of bananas, "it is likely that the banana was peeled and dropped within a very short time after it was taken from the bin of bananas." (Id.)

New York case law, however, conclusively rejects this line of reasoning. The instant case is indistinguishable from Faricelli v. TSS Seedman's Inc., 94 N.Y.2d 772 (1999), in which the New York Court of Appeals affirmed the Appellate Division's reversal of a jury award in a slip and fall case where a plaintiff slipped on a blackened banana peel in a department store. In Faricelli, as in this case, the plaintiff tried to argue that the arguably aged condition of the peel would permit an inference that the peel had been on the floor for an extended period of time, and thus a finding of constructive notice. The Court of Appeals held that there was "no evidence that defendant knew about the banana peel, or that it had been on the floor long enough prior to the accident that notice might be inferred. [Citations omitted.] The simple fact that the peel was blackened did not establish constructive notice." Id. at 774. So too here, the simple fact that the banana was brown and smashed does not establish constructive notice.

Faricelli, a decision from New York's highest court, binds this Court in this diversity action. As often in tort law, the decision is not a procedural decision about the correct standard for directing a verdict in a civil case, but gives concrete substance to the meaning of constructive notice of dangerous conditions under New York law.[2] Faricelli establishes the proposition that

---

[2] Under the doctrine established in Erie Railroad Company v. Tompkins, 304 U.S. 64 (1938), federal courts sitting in diversity apply state substantive law and federal procedural law, Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427 (1996). Classification of a law as "'substantive' or 'procedural' for Erie purposes is sometimes a challenging endeavor." Id. Here, the Court of Appeal's ruling, although arguably in the form of a "procedural instruction," has an "objective [that] is manifestly substantive." Id. at 429. On the other hand, the standard for summary judgment in federal courts is governed by Rule 56 of the Federal Rules of Civil Procedure, and "where the matter in question is one covered by [those rules], it is settled that the Federal Rule applies regardless of contrary state law." Com/Tech Commc'n Techs., Inc. v.

the constructive notice of a dangerous condition necessary to permit recovery in a slip-and-fall case cannot be inferred simply from the condition of a piece of fruit on which the plaintiff slipped. Here, as in Faricelli, a reasonable juror could not determine on this evidence that the banana had been on the floor for any specific length of time before DeLotch and her sister slipped on it.

Neither the absence of a peel or the presence of bananas for sale in the vicinity distinguishes Faricelli, or supports a reasonable inference about how long the banana had been on the floor. Even if a jury could infer that the banana had at some point been on display in the store (a fact that is hardly established by the simple fact that bananas were on sale nearby in the store), DeLotch's conclusion that the banana was promptly dropped, while still in pristine condition, and had been on the floor long enough to turn brown is the purest speculation. There is simply no evidence as to when and where the banana was peeled or as to its condition when discarded. It is hardly a remarkable experience to select a fresh-looking banana from a display and to find upon peeling that it is overripe or badly bruised. If someone took a banana from the display and peeled it, there is no reason to infer that he or she accidentally dropped a fine banana rather than that he or she discarded an overripe and mushy one. As one New York court has

---

Wireless Data Sys., Inc., 163 F.3d 149, 150-51 (2d Cir. 1998) (citation and internal quotation marks omitted). Assuming that Faricelli's decision to affirm the reversal of the jury award is properly classified as procedural and not substantive, the result in this case would be no different. Faricelli is still binding on this Court insofar as it reaffirms New York's substantive standards governing the liability of businesses to their invitees. Faricelli, 94 N.Y.2d at 774, citing Gordon 67 N.Y.2d at 837-38. Applying the indisputably substantive principles established in Gordon and reaffirmed in Faricelli, and Rule 56, Fed. R. Civ. P., to the record here, the Court still concludes that summary judgment must be granted. DeLotch's evidence is too weak and her chain of inferences is too attenuated for a reasonable factfinder to conclude that, more likely than not, the dangerous condition existed for any substantial period of time before the accident.

noted, "coloration evidence . . . is just as consistent with the theory that someone had dropped a ripe banana shortly before plaintiff stepped on it" as with the theory that someone dropped a fresh banana long before plaintiff stepped on it. Maiorano v. Price Chopper Operating Co., Inc., 633 N.Y.S.2d 413, 414 (3d Dep't 1995).

Moreover, DeLotch provides no direct evidence of the banana's condition before the accident. So far as the record reveals, the banana was only examined after both she and her sister had stepped on it, and she had fallen on it. Bruised bananas discolor rapidly, and even a relatively fresh banana might well look "brown and mushy" after enduring such trauma. Simply put, DeLotch's evidence is too weak and her chain of inferences is too attenuated for a reasonable factfinder to conclude that, more likely than not, the dangerous condition existed for any substantial period of time before the accident.

Therefore, DeLotch's claim fails, and summary judgment must be awarded to Wal-Mart.

B.  Mode of Operation Rule

In the alternative, DeLotch argues that this Court should apply the "mode of operation" rule, adopted (by DeLotch's count) by at least twenty-three other states for determining liability in slip and fall cases. (See P. Opp. 14, citing Kelly v. Stop & Shop, Inc., 281 Conn. 768, 800 (2007).)  In Connecticut, for example, a business invitee may recover for an injury from a dangerous condition on the business's premises "without a showing that the business had actual or constructive notice of that condition, if the condition was reasonably foreseeable and the business failed to take reasonable measures to discover and remove it." Kelly, 281 Conn. at 793. Notwithstanding that the New York Court of Appeals has not adopted such a rule (see P. Opp.

8

13), DeLotch insists that this Court should "exten[d]" New York's law (id. at 11) to "reflect the realities of changing economic and societal forces" (id. at 13).

As DeLotch notes, the traditional rule has been criticized for encouraging a business owner to turn a blind eye to dangerous conditions on the premises. (Id. at 14.) Moreover, a typical consumer may have "no access to the proof necessary to establish the liability of the retailer." (P. Opp. 15.) Often a plaintiff will have no personal knowledge of the dangerous condition in advance of the accident (and thus will have difficulty proving that the dangerous condition had existed long enough to establish constructive notice); if the plaintiff knew in advance of the dangerous condition, he or she would likely have been able to avoid the accident in the first place. On the other hand, the mode of operation rule divorces liability from traditional understandings of causation. A retailer whose cleaning operations fall short of industry standards may be negligent, but such negligence may not be causally related to an accident that might not have been prevented even by best practices. In a case such as this one, for example, if it is as likely as not that the banana was dropped on the floor shortly before DeLotch's fall, even the most rigorous cleaning practices would not have prevented the accident. In such a situation, any failure to employ best practices would not have been the cause of the injury.

There may be good reasons for a state to adopt the mode of operation rule. The state's courts or legislature could conclude that a rule allocating greater responsibility to retailers in slip and fall cases promotes the most socially efficient outcome, as retailers may be the "least-cost avoider" – i.e., the person or institution that can avoid the most accidents for the lowest cost – and that the rule would encourage them to adopt reasonable and efficient safety practices. See,

9

e.g., Holtz v. J.J.B. Hilliard W.L. Lyons, Inc., 185 F.3d 732, 743 (7th Cir. 1999) ("[D]uties should rest upon the least-cost avoider." (citation omitted)); Nat'l Union Fire Ins. Co. v. Riggs Nat'l Bank, 5 F.3d 554, 557 (D.C. Cir. 1993) (Silberman, concurring) ("Placing liability with the least-cost avoider increases the incentive for that party to adopt preventive measures and ensures that such measures would have the greatest marginal effect on preventing the loss.") Conversely, the poorer a retailer's safety standards, the more likely (or less unlikely) it is that dangerous conditions, like fallen bananas, remain hazards for unreasonable periods of time. Moreover, a court or legislature could conclude that although any particular dangerous condition may not be specifically known by a retailer, certain conditions are so common and foreseeable that they should be considered inevitable. There may be good reasons to adopt a rule that would essentially make store owners who fall below industry safety standards no-fault guarantors of customer safety.

    Whether the mode of operation rule is ultimately more desirable than the existing New York law that imposes more limited liability on property owners, however, is a question not for this Court, but for New York's Legislature or Court of Appeals. This is not a case in which New York's law is ambiguous or unsettled, such that this Court must predict how the Court of Appeals would rule in a similar case. Here, New York's highest court has already spoken, both in general in Gordon, 67 N.Y.2d at 837, and more specifically in Faricelli, 94 N.Y.2d at 774, on facts not fairly distinguishable from those in the instant case, and made clear that actual or constructive notice of the dangerous condition is a prerequisite to a property owner's liability in a case of this sort. Until and unless New York changes its substantive rules, this Court must conclude that, where there is no evidence that a defendant created or had actual notice of a

dangerous condition, a plaintiff must prove that the condition was "visible and apparent" and "exist[ed] for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it." Gordon, 67 N.Y.2d at 837. Since on this record the evidence is insufficient to permit a reasonable juror to find that Wal-Mart was on constructive notice of the banana, summary judgment for defendant must be granted.[3]

    C.    Spoliation

DeLotch argues that the Court should draw an adverse evidentiary inference against Wal-Mart for its alleged failure to exercise due care in preserving pictures taken by Wal-Mart's agents of the accident scene (P. Opp. 17-18), but she provides no reason why the pictures would be probative, let alone favorable to her, on the critical issue of whether Wal-Mart had actual or constructive notice of the dangerous condition in advance of her accident. Even assuming that the pictures would have generally supported her account of the accident or of the condition of the floor immediately *after* the fall (facts this Court has assumed to be true for purposes of this motion), DeLotch has not even attempted to argue that they would provide evidence of constructive notice, beyond confirming the brown mushed quality of the banana. For the reasons stated, the simple fact that the banana was brown and mushed after it was stepped on twice and then fallen upon does not establish that the banana had been on the floor for any substantial length of time.

---

[3] Because the mode of operation rule is not the law in New York, it is unnecessary to reach defendant's additional contention that plaintiff's proffered expert testimony about whether its cleaning practices complied with industry standards fails to meet the standards of admissibility required by Rule 702, Fed. R. Evid., and Daubert v. Merrell Dow Pharms. Inc., 509 U.S. 579, 597 (1993). (See D. Mem. unpaginated.)

## CONCLUSION

As DeLotch has not produced sufficient evidence to raise a genuine issue of fact as to whether Wal-Mart had constructive notice of the banana upon which she fell before her fall, Wal-Mart's motion for summary judgment is granted.

SO ORDERED.

Dated: New York, New York
       June 16, 2008

_____
GERARD E. LYNCH
United States District Judge